# United States District Court
## for the Northern District of Illinois
### Eastern Division

| | | |
|---|---|---|
| ARNETHA D. PRICE-MOORE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-CV-00707 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| URBAN FINANCIAL, LLC; JPK CAPITAL, LTD., | ) | |
| d/b/a KENNEDY CONNECTION REALTORS; | ) | |
| TORNABENE, INC. d/b/a FIVE STAR | ) | |
| PROPERTY MANAGEMENT COMPANY; | ) | |
| VILLAGE OF OLYMPIA FIELDS; | ) | |
| POLICE OFFICER E. LOPEZ; and | ) | |
| POLICE OFFICER D. BLASINGAME, | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Arnetha Price-Moore lived in Olympia Fields, Illinois, but her house was fore-closed on and—around three years later—she eventually was evicted. She alleges that the new owner, its property-management company, and Olympia Fields police officers engaged in a sustained campaign of harassment against her between the fore-closure and the eviction. Although Ms. Price-Moore does not contest the foreclosure itself, she says that the way in which the home's new owner sought to evict her was illegal, even culminating in a false arrest for trespassing.

After removing the case from state court, two sets of defendants now seek to dismiss most of the claims.[1] Finance of America Reverse LLC (which was known as Urban Financial LLC during most of the relevant time) argues that the claims are legally precluded by the prior foreclosure action in state court and that Urban, as the lawful owner of the house, cannot be sued on the tort claims that Price-Moore has brought. The Village of Olympia Fields, Officer Lopez, and Sergeant Blasingame (the Olympia Fields Defendants) argue that Price-Moore has not stated a *Monell* claim against the Village, nor has she pleaded enough on Blasingame's personal involvement to adequately state a claim for relief. All of the Olympia Fields Defendants also challenge the abuse-of-process claims. For the reasons discussed in this Opinion, Urban's motion to dismiss is denied in large part and granted against only the abuse-of-process claim. The Olympia Fields Defendants' motion is granted.

## I. Background

Taking the allegations in Price-Moore's amended complaint as true, as the Court must at this stage of the litigation, *see Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 646 (7th Cir. 2017), the following facts are set forth in the complaint. Price-Moore's troubles began in May 2014, when a reverse mortgage on the house—a mortgage of which she allegedly was unaware—went into foreclosure. R. 1-1, Exh. A, First Am. Compl. ¶¶ 1, 14. (In Price-Moore's prior filings in state court, she implies that the mortgage was improperly taken out by Charles Price, then a co-trustee of the

---

[1]The Court has subject matter jurisdiction over the federal claims under federal-question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

trust that had legal title to the home (and now deceased). R. 15-1, Exh. E, Compl. ¶¶ 14–23, 130.) She appealed the foreclosure, and lost. First Am. Compl. ¶¶ 1. That judgment became final on January 21, 2016, in an order both approving the foreclosure sale to Urban Financial and granting Urban possession of the house. *Id*. ¶ 17. Under Illinois law, however, the ownership and the right to possession did not alone give Urban the right to forcibly remove Price-Moore from the house. To do that, Urban had to file an eviction action, and the Cook County Sheriff's Department would then evict her. *Id*. ¶ 18. Price-Moore timely filed an appeal of the January 2016 order. *Id*. ¶ 19.

While that appeal was pending, Urban sought an eviction order in June or July 2016, but Price-Moore alleges that there were procedural irregularities with the lawsuit. First Am. Compl. ¶¶ 20-21. The action was filed against "Denise Price" rather than Price-Moore, and she was neither served with process nor given notice of the eviction action. *Id*. ¶¶ 22–23. Nonetheless, Urban went ahead with the eviction on October 22, 2016. Price-Moore alleges that Urban's employees, among others, broke into the home while she was asleep. After she confronted them, they left, but took a piece of art and an expensive lawn hose on their way out. *Id*. ¶¶ 23–26.

In order to prevent another intrusion, Price-Moore petitioned the Illinois Appellate Court for a stay of enforcement of the Sale and Possession order. First Am. Compl. ¶ 27. The appeals court granted her request on November 22, 2016—the same day that Cook County Sheriff's deputies again arrived to attempt to evict her. *Id*.

¶¶ 27–30. After some back-and-forth between Price-Moore, the deputies, and Urban's employees, the eviction was called off. *Id*. ¶¶ 31–36.

Sometime in 2017, Urban filed a second eviction action, and obtained a possession order against Price-Moore. *Id* ¶¶ 37–38. But on August 17, 2017, Price-Moore filed for Chapter 13 bankruptcy, which automatically stayed enforcement of any pending eviction actions against her. *Id*. ¶¶ 38–40. According to Price-Moore, Urban was independently aware of the bankruptcy proceeding, because she mailed Urban a copy of the petition the same day that she filed it. *Id*. ¶ 41.

Despite the bankruptcy filing, Urban decided to move forward with the eviction anyway, and its employees—along with Cook County Sheriff's deputies—arrived at the house on August 24, 2017. First Am. Compl. ¶ 43. Though Price-Moore showed them a file-stamped copy of the bankruptcy petition, they insisted on moving ahead with the eviction. *Id*. ¶¶ 45–46. Later in the day, an employee of the property-management company responsible for the house called Price-Moore to let her know that it had reviewed the bankruptcy petition and that she could pick up the keys and move back in. *Id*. ¶¶ 47–48.

After the second failed eviction, Price-Moore alleges, agents of Urban began surreptitiously to harass and intimidate her. On August 30 and September 7, 2017, various men came to the property saying that they were authorized to perform maintenance. Price-Moore turned them away, and they said that they would not return. First Am. Compl. ¶¶ 49–51. But soon after, on September 13, two men entered the front door of the home with keys. *Id*. ¶ 52. They refused to tell Price-Moore why

they were there or why they had keys. *Id*. ¶ 54. She called 911 to report a break-in, but the Olympia Fields police declined to pursue criminal charges against the men. *Id*. ¶ 55.

Around the same time, during August and September 2017, various employees and agents of Urban and the property-management companies it employed entered the property while Price-Moore was asleep or away from home; she saw signs that people had been in the house, and some of her personal property was missing or damaged, and her private documents and personal belongings had been accessed. First Am. Compl. ¶¶ 56–57, 91. She never demanded that Urban or its agents return her lost or damaged property, she says, because it was "sold, destroyed, or otherwise disposed" of, and therefore any demand would have been "useless." *Id*. ¶ 85. And Urban has never offered to replace, return, or reimburse Price-Moore for the allegedly stolen property. *Id*. ¶ 86.

Price-Moore concedes that she was lawfully evicted from the home on January 15, 2019. First Am. Compl. ¶ 59. Concerned about her personal possessions that remained on the property, she placed calls to the Olympia Fields police department on January 22, January 29, and February 5, 2019. *Id*. ¶ 60. On February 25, 2019, though, the situation escalated. Officer Lopez of the Olympia Fields police department responded to a call reporting an open garage door at what had been Price-Moore's home. *Id*. ¶ 61. When he arrived at the house, Lopez saw two vehicles parked in the street—one occupied by Price-Moore, the other by Oscar Griffin, an employee of Five Star, a property-management company handling the house. *Id*. ¶ 62.

According to Price-Moore, Officer Lopez then called Dustin Handlon, another property-management employee, and encouraged him to file a criminal complaint against Price-Moore for trespassing. First Am. Compl. ¶ 63. Handlon did so—even though he was not on the scene and had not witnessed Price-Moore's alleged crime—and then Lopez arrested Price-Moore and took her to the Olympia Fields police station, where she was processed and her car was impounded. *Id*. ¶¶ 64–65. Price-Moore was so terrified that she suffered chest pains. *Id*. ¶ 65.

Sergeant Blasingame of the Olympia Fields police department approved Officer Lopez's arrest of Price-Moore. First Am. Compl. ¶ 66. According to Price-Moore, "Blasingame had prior dealings with Plaintiff related to the subject property, and upon information and belief sought to punish Plaintiff for her efforts to enforce her rights vis-à-vis the subject property." *Id*. Also, Blasingame, Lopez, and the Olympia Fields police department felt malice toward Price-Moore due to the prolonged and contentious interactions arising from the repeated eviction attempts. *Id*. The charges against Price-Moore were later dropped, because there were no witnesses or other evidence that she had in fact committed a crime. *Id*. ¶ 67. She alleges that she was only charged with a crime in an attempt to retaliate against her for having previously defended her rights to the property and to prevent her from further pursuing her rights. *Id*.¶¶ 117–119.

Fast forward to this litigation: Price-Moore initially filed this action *pro se* in state court. R. 15-5, Urban Br., Exh. E, Compl. Later, with the assistance of counsel, she then filed an amended complaint in state court. R. 1-1. That amended

complaint—which is now the operative pleading—brings a total of eight counts against various defendants. Those defendants are: the Village of Olympia Fields, Officer Lopez, and Sergeant Blasingame; Urban Financial of America (now Finance of America); JPK Capital, Ltd., which did business as Kennedy Connection Realtors; and Tornabene, Inc., which is known as Five Star Property Management Company. First Am. Compl. at 1. Price-Moore alleges that Finance of America employed Kennedy, which in turn employed Five Star, to manage the property. *Id*. ¶ 9.

The first five counts are brought against Five Star, Kennedy, and Urban: Count 1, for trespass to real property; Count 2, for trespass to chattels; Count 3, for conversion; Count 4, for intrusion upon seclusion; and Count 5, for intentional infliction of emotional distress. The remaining three counts arise from Price-Moore's arrest and charge for trespass: Count 6, for false arrest under the Fourth Amendment, against Olympia Fields, Lopez, and Blasingame; Count 7, for Illinois common law malicious prosecution against Kennedy, Urban, Olympia Fields, Lopez, and Blasingame; and Count 8, for Illinois common law abuse of process, against the same group of defendants. R. 1-1 at 9–16. It is time to turn to the dismissal motions filed by both sets of defendants.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[2]
The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Claim preclusion

Urban argues that all of the claims against it must be dismissed due to the doctrine of "res judicata." R. 15 at 8. To Urban's way of thinking, Price-Moore is using this case to relitigate claims and defenses that were or should have been raised in the

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

state court foreclosure case, which she lost.[3] *Id.* "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Here, Urban's argument is more precisely analyzed as invoking claim preclusion. "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Id.* (cleaned up). Illinois preclusion rules apply. *See Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014). "In Illinois the defense of claim preclusion has three prerequisites: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies." *Id.* (citing *Cooney v. Rossiter*, 986 N.E.2d 618, 621 (Ill. 2012)).

Here, Price-Moore and Urban agree that the first and third elements are satisfied. R. 15 at 8–9; R. 32, Pl.'s Resp. to Urban at 2–3. But the parties dispute whether the causes of action are the same. Under Illinois law, the second element "is assessed by reference to the 'transactional test,' which provides that separate claims are considered the same cause of action for claim-preclusion purposes if they arise from a

---

[3]It is worth noting that claim preclusion is an affirmative defense, so it ought to be asserted via a motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), or a summary judgment motion, Fed. R. Civ. P. 56, rather than via a Rule 12(b)(6) motion. *See Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014). Having said that, the presentation of the defense via the current filings is sufficient to decide this particular issue. (It is a different story on *issue* preclusion, as explained later in the Opinion.)

single group of operative facts, regardless of whether they assert different theories of relief." *Walczak*, 739 F.3d at 1016–17 (cleaned up) (citing *Cooney*, 986 N.E.2d at 622).

From the face of Price-Moore's *operative* complaint (the First Amended Complaint), it is clear that she is not seeking to relitigate the foreclosure judgment. She observes that she "fought the foreclosure" and "was unable to prevail." First Am. Compl. ¶ 15. She describes the final foreclosure order of January 21, 2016 as "granting Urban Financial possession of the subject property," and then goes on to say that "Eve[n] with the Sale and Possession Order in hand, however, Urban Financial was not granted the right to dispossess Plaintiff from the subject property." *Id.* ¶¶ 17, 18. The course of conduct that Price-Moore characterizes as tortious happened *after* the final foreclosure order was entered, and centers around, as she puts it, "the manner and method that Defendants undertook to evict Plaintiff from the subject property." R. 32, Pl.'s Resp. to Urban at 2. By the laws of physics and time, Price-Moore could not have litigated any of the post-foreclosure allegations during the state court case because the underlying conduct simply had not yet happened. And the *operative* complaint recognizes that the foreclosure order is final and that this federal case cannot challenge it.[4] The doctrine of claim preclusion cannot bar Price-Moore from bringing the claims.

---

[4]The key allegations are in the "operative" complaint; Urban relies at times on statements in the initial complaint, but that complaint has been superseded by the First Amended Complaint for purposes of the Rule 12(b)(6) analysis. *See, e.g.*, *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995). It is true that, if the case ever gets to trial, Price-Moore might be impeached by any factually inconsistent statements in the initial complaint. But for now, at the dismissal-motion stage, it is the operative complaint that counts.

## B. Eviction-related Claims

Next, Urban contends that any of the claims arising out of the various eviction attempts must be dismissed. First, Urban argues that the Court must dismiss the claims for trespass to real property (Count 1) and intrusion upon seclusion (Count 4), because both of those torts requires the unlawful or unauthorized entry into a space over which the plaintiff has a valid possessory interest. *See, e.g.*, *Jacobson v. CBS Broadcasting, Inc.*, 19 N.E.3d 1165, 1180–81 (Ill. App. Ct.2014); *Dial v. City of O'Fallon*, 394 N.E.2d 84, 86 (Ill. App. Ct. 1979). Because Price-Moore did not have a valid possessory interest in the property at the time, Urban asserts, these claims must fail.

Although Urban might ultimately succeed on this argument, the Court must reject it at the pleading stage. It is true that, in order to resist summary judgment or to win at trial, Price-Moore certainly must prove that she had a valid possessory interest in the property at the time of the attempted evictions. Right now, the operative complaint consistently alleges that the evictions were unlawful. *See, e.g.*, First Am. Compl. at 4–5. According to Price-Moore, each of these eviction orders were in some way ineffective. *Id.* ¶¶ 21–22, 28, 31, 40–42. To be sure, Urban eventually might successfully invoke issue preclusion to defeat those allegations. "Issue preclusion, in contrast [to claim preclusion], bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (cleaned up). When the facts are uncovered in discovery (including establishing the timing of Price-Moore's bankruptcy petition and the timing of the alleged appellate

stay, and what happened after the petition's filing and the stay's issuance), Urban should be able to present the affirmative defense again at the summary judgment stage. But because Price-Moore has pleaded enough facts to suggest that she had lawful possession at the pertinent time, the claims for trespass (Count 1) and intrusion on seclusion (Count 4) survive this motion to dismiss.

Next, invoking a similar argument, Urban seeks to dismiss the claims for trespass to chattels (Count 2) and conversion (Count 3). On the claim for trespass to chattels count, Urban argues that, under Illinois common law, "a party lawfully evicting an occupant assumes no liability or duty for the left behind personal property," *citing Dargis v. Paradise Park, Inc.*, 819 N.E.2d 1220, 1231–32 (Ill. App. Ct. 2004). Again, the possessory interest in the property at the time of the attempted evictions, and the lawfulness of those attempts, cannot be resolved at the pleading stage for the same reasons as discussed earlier. The claim for trespass to chattels survives.

But the conversion claim fails to adequately plead a separate element. Urban argues that, on the conversion claim, Price-Moore fails to allege that she ever made a demand on Urban for the return of the property. R. 15 at 12. To succeed on a conversion claim, a demand for the return of the property is required under Illinois law. R. 15 at 12; *see Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Price-Moore only alleges that she noticed that the property was missing (presumably stolen) or destroyed, First Am. Compl. ¶ 57, and that she called 911 to report a break-in. *Id.* ¶ 55. She further alleges that any demand would have been "useless," *Id.* ¶ 85, and in her response cites *A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 477 N.E.2d 1326, 1334 (Ill. App.

Ct. 1985), in support of a demand-futility exception, R. 32, Pl.'s Resp. to Urban at 8.
But a subsequent Illinois Supreme Court case did not explicitly adopt that exception.
In *Cirrincione v. Johnson*, 703 N.E.2d at 70, the Illinois Supreme Court confirmed
that a conversion claim requires a demand for return of the property. (Nor does the
911 call to the Olympia Fields police qualify as a demand on Urban.) If Price-Moore
can fix this claim, then she may promptly seek leave to amend the complaint again.
But for now, the conversion claim is dismissed without prejudice.

### C. Arrest-related Claims

### 1. Urban Financial

Moving on to the claims arising out of the arrest of Price-Moore, Urban again
relies on its putative possessory interest in the property, this time in support of Ur-
ban's challenge to the claims for malicious prosecution and abuse of process. Urban
argues that "the allegations in the *Complaint* and Amended Complaint demonstrate
that sufficient cause and a lawful motive existed for filing a criminal report for tres-
pass against Plaintiff." R. 15 at 13 (emphasis added). It bears repeating: the initial
complaint has been superseded by the First Amended Complaint, so Urban cannot
rely on the allegations in the initial complaint to undermine the legality of the claims
in the newer complaint. In the First Amended Complaint, Price-Moore admits only
that she was parked on the *street* in front of the property on the date when she was
arrested for trespassing. First Am. Compl. at ¶¶ 59, 61. So the First Amended Com-
plaint does not undermine itself by alleging that she had entered the property.

13

Under Illinois common law, the tort of malicious prosecution comprises five elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). The tort of abuse of process requires "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). Urban argues that Price-Moore's presence in a parked car on the street in front of the home constitutes probable cause for the crime of trespass, thus undermining both the malicious-prosecution claim and the abuse-of-process claim.

As pleaded, the malicious-prosecution claim survives, but not the claim for abuse of process. Based on what is alleged in the First Amended Complaint, Price-Moore's presence on the *street* is not enough to provide probable cause to arrest her for trespass. The allegations go on to adequately plead malice given the alleged conversation between Officer Lopez and Urban's agent, Dustin Handlon, in which they allegedly cooked up the trespass charge. So the malicious-prosecution claim is adequately pleaded.

But the abuse-of-process claim fails because there is no allegation addressing what aspect of the prosecution—separate from the prosecution itself (which makes up the malicious-prosecution claim)—was abusive. Nothing in the First Amended

Complaint presents a concrete factual allegation about any irregularities in the legal process (again, separate from the prosecution itself). So this claim is inadequately pleaded. Because the complaint has already been amended once, and Price-Moore offers no other factual allegations suggesting that she can fix this claim, the abuse-of-process claim is dismissed with prejudice.

Finally, Price-Moore brings a claim for intentional infliction of emotional distress against Urban and its agent-companies, premised on the totality of the alleged misconduct arising out of the various eviction attempts. Urban once again argues that because it had lawful possession of the property, any actions its agents took cannot have been "outrageous," as required to successfully plead an emotional-distress claim. R. 15 at 14. Again, the right of possession and how the eviction orders interacted with the bankruptcy petition and the appellate stay must be examined in discovery rather than resolved on the pleadings.

Indeed, more to the point, it is plausible too that a defendant could be liable for deploying outrageous means to effectuate an otherwise lawful eviction. Consider, for example, a new owner of a foreclosed-on house threatening to shoot the former owner, even with a valid eviction order in hand. The validity of the eviction order would not immunize the new owner from liability. Here, Price-Moore has pleaded a years-long campaign during which people broke into her home in the middle of the night, stole and damaged her personal property, went through private documents, and disregarded valid court orders staying the eviction, all leading to severe

emotional distress. Whether she can prove the allegations is for later in the case; at the pleading stage, the claim survives.

### 2. Olympia Fields

Moving on to the claims against Olympia Fields and Sergeant Blasingame, the Village first argues that it cannot be liable on the Fourth Amendment claim (Count 6), brough under 42 U.S.C. § 1983 claim. Olympia Fields points out that Price-Moore has not pleaded a *Monell* claim against it, and there is no *respondeat superior* liability for municipalities under § 1983. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). Price-Moore concedes this point. R. 33, Pl.'s Resp. to Olympia Fields at 2–3. The Village of Olympia Fields thus is dismissed from the Fourth Amendment claim (Count 6).

Next, Sergeant Blasingame moves to dismiss all of the claims asserted against him. To recap the factual allegations, remember that Officer Lopez was the officer who actually arrested Price-Moore; Sergeant Blasingame was Lopez's supervisor, and is not specifically alleged to have done anything other than "approve[]" the arrest. First Am. Compl. ¶ 66. Presumably, Sergeant Blasingame sought to retaliate against Price-Moore due to a history of prior encounters in the context of the eviction attempts. *Id.*

But these allegations are insufficient to state a claim against Sergeant Blasingame. First, *respondeat superior* liability does not apply to § 1983 claims, so his mere supervisory position over Lopez is not enough by itself to keep Blasingame in the case. Instead, supervisory liability only "will be found … if the supervisor, with

knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Blasingame would have had to be "personally involved" in Lopez's misconduct, such that Blasingame would "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see. [He] must in other words act either knowingly or with deliberate, reckless indifference." *Id.* (cleaned up). Here, the allegations simply do not raise a plausible inference that Blasingame condoned Lopez's alleged misconduct with knowledge of its unlawfulness. Merely approving the arrest, without more, is insufficient.

Indeed, even the Illinois malicious-prosecution claim against Blasingame founders without any more specific factual content to personalize the allegations against him. Without more specific facts from which to infer that Blasingame *personally* knew that Lopez's conduct was unlawful, or that there was no probable cause to arrest Price-Moore, or that the prior interactions (whatever they were, there is no detail in the First Amended Complaint) between Blasingame and Price-Moore support an inference of improper motive, the mere approval of the arrest is not enough to sustain either the false-arrest or the malicious-prosecution claim against him. As advanced against Blasingame, those claims are dismissed without prejudice.

Finally, the abuse-of-process claim is dismissed as to Olympia Fields, Lopez, and Blasingame. As discussed earlier, there is no allegation of an abuse of process that is separate from the malicious-prosecution claim itself. So the abuse-of-process claim is dismissed against the Olympia Fields Defendants with prejudice.

17

## IV. Conclusion

Urban's motion to dismiss is denied in large part and granted only as to the abuse-of-process claim (Count 8), which is dismissed with prejudice. Olympia Fields's motion to dismiss is granted as to Sergeant Blasingame on the false-arrest and malicious-prosecution claims; those claims are dismissed without prejudice as to Blasingame. The motion is also granted as to Olympia Fields on the claim for false arrest (Count 6). Also, the abuse-of-process claim (Count 8) is dismissed with prejudice as to all three of the Olympia Fields Defendants.

ENTERED:


           s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 26, 2020

18